LARRY FRAZIER *v.* JOHN R. MANSON, COMMISSIONER OF CORRECTION

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and A. HEALEY, Js.

Argued November 7, 1978—decision released February 27, 1979

*Charles D. Gill,* public defender, for the plaintiff.

*Stephen J. O'Neill,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the defendant.

ARTHUR H. HEALEY, J. This matter was instituted as a habeas corpus petition in the Superior Court and was reserved for the advice of this court. The parties have stipulated to the pertinent facts and submitted two questions upon which the advice of this court is sought.[1]

---

[1] "1. Are the provisions of Section 18-7a of the General Statutes applicable to persons sentenced to a term of imprisonment prior to October 1, 1976, to the effect that they are entitled to the 'good time' credits provided for by this statute for the balance of their sentence after October 1, 1976?

"2. If the provision of Section 18-7a of the General Statutes which provides that it applies to '[a]ny person sentenced to a term of imprisonment, on and after October 1, 1976,' denies its application to persons sentenced prior to that date but still serving sentences, then, is that provision invalid as being in violation of such person's rights to equal protection of the law as guaranteed by the Fourteenth Amendment of the Constitution of the United States and Article I, Section 20 of the Connecticut Constitution?"

The stipulation discloses the following facts: On July 3, 1975, Larry Frazier, hereinafter the plaintiff, was sentenced to a term of not less than 54 nor more than 108 years by the Superior Court in Fairfield County following his conviction on several criminal counts. On October 27, 1975, the sentence review division ordered that the plaintiff be resentenced to a term of not less than 30 nor more than 60 years. On November 13, 1975, the plaintiff was resentenced by the Superior Court to a term of not less than 32 years nor more than 64 years. On October 26, 1976, the sentence review division again ordered that the plaintiff be resentenced to a term of not less than 30 nor more than 60 years. On December 8, 1976, the plaintiff was resentenced by the Superior Court to a term of not less than 30 nor more than 60 years. The plaintiff is currently serving the sentence of not less than 30 nor more than 60 years. The defendant is computing the plaintiff's so-called good time credit on his sentence, based upon the provisions of General Statutes § 18-7.[2]

[2] General Statutes § 18-7 provides in part: "POWERS AND DUTIES OF WARDEN. PUNISHMENT AND REWARD OF INMATES. The warden shall manage the Connecticut Correctional Institution, Somers, subject to the direction of the commissioner of correction, and he shall keep all the prisoners employed in such labor as the commissioner orders, during the term of their imprisonment. He shall also keep a record of any punishment inflicted upon a prisoner, showing its cause, mode and degree, and a like record of the conduct of each prisoner. Any prisoner may, by good conduct and obedience to the rules of said institution, earn a commutation or diminution of his sentence, as follows: Sixty days for each year, and pro rata for a part of a year, of a sentence which is not for more than five years; and ninety days for the sixth and each subsequent year, and pro rata for a part of a year, and, in addition thereto, five days for each month as a meritorious time service award which may be granted in the discretion of the warden and the commissioner for exemplary conduct and meritorious achievement; provided any serious act of misconduct or insubordination or persistent refusal to conform to institution regulations occurring at any time during his confinement in said prison

General Statutes § 18-7a,[3] which purports to apply to persons sentenced on and after October 1, 1976, provides, in effect, more good time credit than its predecessor, General Statutes § 18-7. The defendant does not give the plaintiff any good time credit under General Statutes § 18-7a on the sentence he is now serving on the basis that such credit cannot be given to the plaintiff as he was originally sentenced before October 1, 1976.

The first question reserved for our advice is: "Are the provisions of Section 18-7a of the General Statutes applicable to persons sentenced to a term of imprisonment prior to October 1, 1976, to the

shall subject the prisoner, at the discretion of the warden and the commissioner, to the loss of all or any portion of the time earned. Said commutation of sentence shall apply to any prisoner transferred from the Connecticut Correctional Institution, Somers, to the Connecticut Correctional Institution, Cheshire. When any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation which he may earn under the provisions of this section. . . ."

[3] General Statutes § 18-7a provides: "GOOD CONDUCT CREDIT FOR PRISONERS SENTENCED ON AND AFTER OCTOBER 1, 1976. Any person sentenced to a term of imprisonment, on and after October 1, 1976 and while still serving such sentence whether such sentence is for a definite, indefinite or indeterminate term, and regardless of the institution wherein the prisoner is confined may, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a commutation or diminution of his sentence in the amount of ten days for each month, and pro rata for a part of a month, of a sentence which is for not more than five years, and fifteen days for each month, and pro rata for a part of a month, for the sixth and each subsequent year of a sentence of more than five years. In the case of an indeterminate sentence, such credit shall apply to both the minimum and maximum term. In the case of an indefinite sentence, such credit shall apply to the maximum term only. Any act of misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such credit by the commissioner or his designee."

effect that they are entitled to the 'good time' credits provided for by this statute for the balance of their sentence after October 1, 1976?'"

In determining the answer to this question we must consider the language of § 18-7a, as well as that of § 18-7. It is clear that § 18-7a, in its terms, applies to "[a]ny person sentenced to a term of imprisonment, *on and after October 1, 1976,*" (emphasis added) and that § 18-7 specifically applies to a prisoner sentenced prior to October 1, 1976. At the outset of our discussion we point out that this court has held repeatedly that where the meaning of a statute is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. *Evening Sentinel* v. *National Organization for Women,* 168 Conn. 26, 29, 357 A.2d 498 (1975), and authorities therein cited. This is consonant with the legislative intent which is found not in what the legislature meant to say, but in the meaning of what it did say. *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452, 364 A.2d 167 (1975). The statutory language of §§ 18-7a and 18-7 is clear and unambiguous and, therefore, courts cannot, by construction, read into such statutes provisions which are not clearly stated. *Houston* v. *Warden,* 169 Conn. 247, 251, 363 A.2d 121 (1975); *Robinson* v. *Guman,* 163 Conn. 439, 444, 311 A.2d 57 (1972). To state it otherwise, where the legislative intent is clear, and the language used to express it is unambiguous, there is no room for statutory construction. *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36 (1967). "There is a presumption that the legislature, in enacting a law, did so in view of existing relevant statutes and intended it to be read with them so as to make one consistent body of law. *State* v. *Jordan,* 142 Conn. 375, 378, 114 A.2d 694; *Jennings* v. *Con-*

*necticut Light & Power Co.,* 140 Conn. 650, 657, 103 A.2d 535; *Coombs* v. *Darling,* 116 Conn. 643, 646, 166 A. 70." *Hurlbut* v. *Lemelin,* supra, 74. This presumption has particular applicability in this case. "Each of these statutes has a reasonable field of operation which does not impinge on the domain of the other; *Busko* v. *DeFilippo,* 162 Conn. 462, 471, 294 A.2d 510; and they can be easily read so as to make one consistent body of law. *State* v. *White,* 169 Conn. 223, 234, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399; *Cicala* v. *Administrator,* 161 Conn. 362, 365, 288 A.2d 66." *Pepin* v. *Danbury,* 171 Conn. 74, 86, 368 A.2d 88 (1976).

There is no repugnancy between the two statutes. In construing a statute courts must presume that a reasonable and rational result was intended. *Norwich Land Co.* v. *Public Utilities Commission,* 170 Conn. 1, 4, 363 A.2d 1386 (1975); *Bridgeport* v. *Stratford,* 142 Conn. 634, 644, 116 A.2d 508 (1955). The legislature intended that a person sentenced to a term of imprisonment on and after October 1, 1976, receive good time different from one so sentenced prior to that date; such a result is neither unreasonable nor irrational. The statute, i.e., § 18-7a, must be applied as its words direct. *Obuchowski* v. *Dental Commission,* 149 Conn. 257, 265, 178 A.2d 537 (1962). That direction is clear and we follow the principle that we have no choice but to interpret the statutes as they are written. *Mancinone* v. *Warden,* 162 Conn. 430, 438, 294 A.2d 564 (1972). The clarity of these two statutes is such that we need not even consider the rule that when two constructions are possible, courts will adopt the one which makes the statute effective and workable, and not that one which leads to difficult

and possibly bizarre results. See, e.g., *Kellems* v. *Brown,* 163 Conn. 478, 506, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973). To apply § 18-7a as the plaintiff urges would thwart the purpose of this statute, which cannot be done; *Evening Sentinel* v. *National Organization for Women,* supra, 31; and to do so would overturn a plain expression of the legislative will. It is not our function to substitute our own ideas of what might be a wise provision in the place of a clear expression of the legislative will. *Dental Commission* v. *Tru-Fit Plastics, Inc.,* 159 Conn. 362, 365, 269 A.2d 265 (1970). We are compelled to reject the plaintiff's claim that § 18-7a can legally be applied as he urges. The application of controlling legal principles requires the conclusion that the provisions of General Statutes § 18-7a are not applicable to persons sentenced to a term of imprisonment prior to October 1, 1976, and that such persons are, therefore, not entitled to the good time credits provided by § 18-7a for the balance of their sentence after October 1, 1976. Accordingly, our answer to the first question reserved for our advice is "No."

We turn now to the second question reserved for our advice which is: "If the provision of Section 18-7a of the General Statutes which provides that it applies to '[a]ny person sentenced to a term of imprisonment, on and after October 1, 1976,' denies its application to persons sentenced prior to that date but still serving sentences, then, is that provision invalid as being in violation of such person's rights to equal protection of the law as guaranteed by the Fourteenth Amendment of the Constitution of the United States and Article I, Section 20 of the Connecticut Constitution?"

The determination of the applicable standard of review is at the threshold of the consideration of any equal protection claim. "This court has many times noted that the equal protection clauses of the state and federal constitutions have a like meaning and impose similar constitutional limitations. *State* v. *Rao,* 171 Conn. 600, 370 A.2d 1310; *Kellems* v. *Brown,* 163 Conn. 478, 485, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678; *Snyder* v. *Newtown,* 147 Conn. 374, 381, 161 A.2d 770, appeal dismissed, 365 U.S. 299, 81 S. Ct. 692, 5 L. Ed. 2d 688; *Lyman* v. *Adorno,* 133 Conn. 511, 515, 52 A.2d 702; *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 195, 132 A. 561." *Horton* v. *Meskill,* 172 Conn. 615, 639, 376 A.2d 359 (1977). "Equal protection analysis must commence with a determination of whether a legislative classification is invidious, or 'inherently suspect,' or whether the legislation impinges upon a fundamental right. Where the legislation impinges upon a fundamental right or creates a suspect classification, then it must be struck down unless justified by a compelling state interest. *Dunn* v. *Blumstein,* 405 U.S. 330, 335, 342, 92 S. Ct. 995, 31 L. Ed. 2d 274. Where the statute does not involve fundamental rights or suspect classifications, the legislation will withstand constitutional attack if the distinction is founded on a rational basis. *McGinnis* v. *Royster,* 410 U.S. 263, 270, 93 S. Ct. 1055, 35 L. Ed. 2d 282; *Dandridge* v. *Williams,* 397 U.S. 471, 484, 485, 90 S. Ct. 1153, 25 L. Ed. 2d 491; *F. S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989; *In re Application of Griffiths,* 162 Conn. 249, 258, 294 A.2d 281, rev'd, 413 U.S. 717, 93 S. Ct. 2851, 37 L. Ed. 2d 910; see

*Douglas* v. *California,* 372 U.S. 353, 358, 83 S. Ct. 814, 9 L. Ed. 2d 811." *Laden* v. *Warden,* 169 Conn. 540, 542–43, 363 A.2d 1063 (1975).

The plaintiff argues that the "strict scrutiny" standard applies, maintaining that he is in a "suspect" classification and claims that there is an infringement of a fundamental right, i.e., his liberty. The defendant, on the other hand, claims that the "rational basis" test is the standard to be applied. Among classifications that have been identified as inherently suspect are those based on alienage, national origin, sex or race. *Frontiero* v. *Richardson,* 411 U.S. 677, 688, 93 S. Ct. 1764, 36 L. Ed. 2d 583 (1973). Fundamental interests have been said to include voting, travel, procreation, the right of free speech and the right of a convicted defendant not to be subject to a period of imprisonment beyond the statutory maximum solely by reason of his indigency. The United States Supreme Court has pointed out that it is not its province to create substantive constitutional rights in the name of guaranteeing equal protection of the laws. *San Antonio School District* v. *Rodriquez,* 411 U.S. 1, 34, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973). In that case the court stated that the key in determining whether a claimed right is "fundamental" lies in assessing whether that "right" is explicitly or implicitly guaranteed by the constitution. Ibid. That same court has already said that "the Constitution itself does not guarantee good time credit for satisfactory behavior while in prison." *Wolff* v. *McDonnell,* 418 U.S. 539, 557, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). "Fundamental rights" are those rights which are established by the constitution; and they are merely given the protection which the constitution demands. *Koelfgen* v. *Jack-*

*son,* 355 F. Sup. 243, 250 (D. Minn. 1972), judgment affirmed, 410 U.S. 976, 93 S. Ct. 1502, 36 L. Ed. 2d 173 (1973). Therefore it cannot be said that a person serving a term of imprisonment who is eligible for certain good time credits under a statute in effect at the time he was sentenced can effectively assert a "fundamental" right to additional good time credits permitted under another statute which became effective after he was sentenced. Sections 18-7 and 18-7a create two classes, i.e., those persons sentenced to a term of imprisonment before October 1, 1976, and those so sentenced on and after October 1, 1976. The plaintiff is in the former class of prisoners. The statutory scheme which generates this appeal cannot be said to be composed of a group or class, i.e., prisoners sentenced to a term of imprisonment before October 1, 1976, that is itself "suspect" as that has been generally interpreted.

Our opinion is that the standard to be used in assessing the equal protection claim is the traditional "rational basis" test and not the more exacting "strict scrutiny" test. An examination of cases that have addressed similar equal protection attacks reinforces our opinion. Moreover, there is the view that the "compelling necessity" test has been ruled inapplicable by the United States Supreme Court in good time cases since *McGinnis* v. *Royster,* 410 U.S. 263, 270, 93 S. Ct. 1055, 35 L. Ed. 2d 282 (1973). See *United States ex rel. Sero* v. *Preiser,* 372 F. Sup. 663, 671 (S.D. N.Y. 1974), affirmed in part and remanded in part, 506 F.2d 1115 (2d Cir. 1974), cert. denied, 421 U.S. 921, 95 S. Ct. 1587, 43 L. Ed. 2d 789 (1975).

In *Mastracchio* v. *Superior Court,* 98 R.I. 111, 200 A.2d 10 (1964), a case strikingly similar to the one before us, the petitioning prisoner applied for

an order restraining the warden of adult correctional institutions from denying him those enlarged benefits for good behavior for time served subsequent to May 6, 1960, the effective date of the statute which conferred those enlarged benefits. Conceding that the preexisting statute controlled as to the time he served prior to May 6, 1960, the plaintiff in *Mastracchio* made the same claim as the plaintiff before us by contending that his credits subsequent to May 6, 1960, should be determined no differently from those of persons imprisoned subsequent to May 6, 1960. *Mastracchio* v. *Superior Court,* supra. The Rhode Island Supreme Court rejected the equal protection claim, referring to their Opinion to the Governor in 91 R.I. 187, 162 A.2d 814 (1960), wherein they advised that the enlarged benefits of the statute invoked in *Mastracchio* could not be extended to any portion of the terms of persons sentenced prior to its effective date. The *Mastracchio* court went on to say: "This situation in no way differs from one where a legislature prospectively reduces the maximum penalty for a crime. In that instance, and without any constitutional violation, one sentenced to the maximum term on the day preceding the effective date of the new statute will serve a longer term than one sentenced to the maximum term on the next day. See *Comerford* v. *Commonwealth of Massachusetts,* 1 Cir., 233 F.2d 294. Here [in *Mastracchio*] two prisoners, one of whom was sentenced prior to the critical date of chap. 112 and the other of whom was thereafter sentenced to an identical term, will receive varying credits for good time. In each instance the classification which is determined by the effective date of the legislation is neither arbitrary nor unreasonable. So long as the good behavior credits of the class of those sentenced prior

to May 6, 1960 are computed in a like manner and the members of that class are offered identical treatment, there is no denial to petitioner of the equal protection of the laws, even though persons sentenced subsequent to May 6, 1960 may be treated differently. See *Berberian* v. *Lussier*, 87 R.I. 226, 139 A.2d 869." *Mastracchio* v. *Superior Court*, supra. The plaintiff in the appeal before us is in exactly the same position and a member of exactly the same class as the plaintiff in *Mastracchio*.

In *Mirenda* v. *Ulibarri*, 351 F. Sup. 676 (C.D. Cal. 1972), the incarcerated plaintiff moved to vacate and "ameliorate" his sentence. He had been sentenced prior to the effective date of a new statute creating more liberal sentencing provisions for those prosecuted under the preexisting statute but who were not sentenced until after the effective date of the new statute. In *Mirenda* the plaintiff claimed that the failure to apply the same treatment to those convicted before the new act as to those convicted thereafter created a class subject to invidious discrimination in violation of the due process and equal protection clauses. In overruling those claims the court said: "This is of necessity the result of any new law which is to go into effect at and on a certain date. The seeming inequity in fixing a cut-off date is outbalanced by the factors of reliance and burden on the administration of justice which argue for prospective application only. *Stovall* v. *Denno*, 388 U.S. 293, 300–301, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967)." *Mirenda* v. *Ulibarri*, supra, 677. Where legislation confers a benefit not previously provided, and is effective on a certain date, this apparent inequity is the result of all such ameliorative legislation and has been held not to deny equal protection. *Jackson* v.

*Alabama,* 530 F.2d 1231, 1238 (5th Cir. 1976), and authorities therein cited. In *Jackson* the court said: "We find in the circumstances here present that the 'factors of reliance and burden on the administration of justice,' *Stovall* v. *Denno,* 1967, 388 U.S. 293, 300, 87 S. Ct. 1967, 1972, 18 L. Ed. 2d 1199, 1205, outweigh the apparent inequity in determining a fixed cutoff date." *Ibid.*

The plaintiff places great stress on *Bolling* v. *Manson,* 345 F. Sup. 48 (D. Conn. 1972). *Bolling* does not sustain him. In that case the Connecticut good time credit statutory scheme was involved. The operation of that scheme, which assigned two people, convicted of the same offense and sentenced to the same maximum term, to different treatment based solely on whether they received a definite sentence or an indefinite one was scrutinized carefully on an equal protection attack. Those serving the former type of sentence were permitted to earn good time credits while those serving the latter type were not permitted to earn such credits. The United States District Court found the "Connecticut statutory system governing good time in correctional institutions unconstitutional as applied to prevent inmates on indefinite sentences from earning such commutation." *Bolling* v. *Manson,* supra, 52. In that case the invidious classification, based as it was on the type of sentence being served, is evident. In the case before us, everyone in each group, whether sentenced before October 1, 1976, or thereafter, receives uniform treatment under the statutory scheme. More to the point, after finding a denial of equal protection in *Bolling,* the court, in enjoining the discrimination complained of, specifically held that its ruling doing so "will have *prospective* force only." *Bolling* v. *Manson,* supra. (Emphasis added.) If the court

could order its ruling to be prospective only, certainly the legislature, where the authority to enact good time credit rests; *Wolff* v. *McDonnell,* supra, 558; can do so prospectively. Especially is this so when all the members of the two groups affected by § 18-7a are treated uniformly.

"The question of classification is primarily one for the legislature, and the courts will not interfere unless a classification presented by statute is clearly irrational and unreasonable. *State* v. *Zazzaro,* 128 Conn. 160, 166, 20 A.2d 737." *State* v. *Rao,* 171 Conn. 600, 603, 370 A.2d 1310 (1976). "Legislation need not deal with all phases of a problem in the same way, so long as the distinctions drawn have some basis in practical experience." *South Carolina* v. *Katzenbach,* 383 U.S. 301, 331, 86 S. Ct. 803, 15 L. Ed. 2d 769 (1966). The purpose of Public Acts 1976, No. 76-358, which included the enactment of what is now General Statutes § 18-7a, was to consolidate good time statutes and to eliminate multiple systems of computing and crediting good time. Accordingly, § 4 of that act repealed General Statutes §§ 18-53 and 18-77a, the former section being concerned with commutation of sentences for good behavior in a community correctional center and the latter being concerned with reduction of sentences for good conduct in the Connecticut correctional institution, Cheshire. Thus, §§ 18-7 and 18-7a remain to provide the means for determining eligibility for good time credits regardless of the type of sentence of imprisonment or institution involved. The role of § 18-7a in the actual consolidation of the good time statutes and its operation toward eliminating the multiple systems of computing and crediting good time has legitimacy and, thus, the distinction between §§ 18-7 and 18-7a worked by the latter

"rationally furthers some articulated stated purpose." See *McGinnis* v. *Royster,* 410 U.S. 263, 270, 93 S. Ct. 1055, 35 L. Ed. 2d 282 (1973). Section 18-7a satisfies the rational basis test consistent with the command of the equal protection clauses. Accordingly, our answer to the second question reserved for our advice is "No."

In sum, the Superior Court is advised that our answer to both questions in the reservation is "No."

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.