[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties have stipulated to the following facts:
1. On August 7, 1981, the petitioner was released on parole supervision under a previously imposed effective sentence of 1-1/2 to 3 years in Docket No. CR6-185393.
2. On October 7, 1981, the petitioner was arrested for offenses charged in Docket No. CR6-199709. CT Page 9734
3. Bond was set therein which the petitioner did not post.
4. Petitioner has remained in the respondent's custody continuously since that time.
5. On October 9, 1981, a remand to custody order was filed against the petitioner at the Connecticut Correctional Center, New Haven, ordering his return to custody under his sentence in Docket No. CR6-185393, pursuant to C.G.S. Sec.54-127.
6. On December 10, 1981, a panel of the Board of Parole revoked the petitioner's parole.
7. Petitioner completed and was discharged from his original sentence in Docket No. CR6-185393 on August 6, 1982.
8. On September 30, 1982, petitioner was sentenced to forty years, execution suspended after twenty-three (23) years, in CR6-199709 and to lesser concurrent sentences in CR6-200623 and CR6-200624.
9. Respondent credits petitioner with fifty-seven (57) days jail credit and twenty (20) days jail credit good time against his sentence in CR6-199709 for presentence confinement and good conduct while in custody in lieu of bond prior to the filing of the remand to custody order and after the discharge of his sentence in Docket No. 6-185393.
10. Respondent credits petitioner with no jail credit or jail credit good time against his sentence in CR6-199709 for confinement from the filing of the remand to custody order through the revocation of his parole.
11. An inmate held on a remand to custody order and/or parole violation warrant who also is being held on unresolved pending charges:
a. Is not eligible for release on bond until a parole revocation hearing is held;
b. Is not considered for release on parole by the Board of Parole, absent a parole revocation hearing.
c. Is not considered eligible for community release programs if he is serving a sentence or facing pending charges at a Class C Felony level or higher.
12. If petitioner were granted jail time credit in CT Page 9735 CR6-199709 for his confinement from the filing of the remand to custody order (October 9, 1981) through the revocation of his parole (December 10, 1981), he would be entitled to approximately sixty-three (63) days jail credit and twenty-one (21) days jail credit good time for that period.
The petitioner claims that a prisoner, like himself, against whom new charges are pending and a remand to custody order has been filed, but whose parole has not yet been revoked, has been "denied bail" within the meaning of General Statutes Section 18-98d(a) and is entitled to presentence credit and presentence good time credit pursuant to General Statutes Section 18-98d(a) and (b). He also claims that the respondent's failure to interpret Section 18-98d(a)(2) to allow such credits denies him and other prisoners in the same situation equal protection of the law under thefourteenth amendment to the United States constitution and/or article first, section 20 of the Connecticut constitution, "by imposing upon them some of the disadvantages of both sentenced and unsentenced prisoners without allowing them the rights and/or privileges of either group. "
General Statutes Section 18-98d(a) provides, in part,
 Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of his sentence equal to the number of days which he spent in such facility from the time he was placed in presentence confinement to the time he began serving the term of imprisonment imposed; provided (1) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (2) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for his presentence confinement, except that if a person is serving a term of imprisonment at the same time he is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section. CT Page 9736
Section 18-98d was enacted in 1980 and consolidated Sections 18-97 and 18-98 following the decision in Mancinone v. Warden, 162 Conn. 430, 294 A.2d 582 (1972); Payton v. Albert, 209 Conn. 23, 30, 547 A.2d 1 (1988); Henderson v. Commissioner of Corrections, Superior Court, Judicial District of Tolland, D.N. 00407 (August 11, 1989, Axelrod, J.)
In Mancinone, the court held that credits authorized by Sections 18-97 (credit for time spent in custody under mittimus) and 18-98 (credit for time spent in custody during which bail is denied or unavailable) were not mutually exclusive and could be earned simultaneously. Payton, supra, 30. "The effect of Mancinone was that an alleged parole violator held under a mittimus could earn jail time credit under Section 18-97 and also accrue jail time credit under Section 18-98 for other charges pending for which he had been unable to obtain bail." Id., 30-31.
When Sections 18-97 and 18-98 were consolidated into Section 18-98d after Mancinone, the following language was added to that section:
 provided: (1) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (2) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for his presentence confinement. . . .
General Statutes Section 18-98d (Emphasis added). "In consolidating Sections 18-97 and 18-98 and adding the language that the provisions of 18-98d shall apply only to a person for whom the existence of a mittimus or inability to make bail or denial of bail is the sole reason for the presentence confinement, the legislature directly addressed the Mancinone language of excluding from the provisions of the presentence confinement statutes those persons who would not be released from custody even if they had posted bail." Henderson, supra, 5-6.
The reason for the petitioner's confinement was not solely because of an inability to obtain bond or a denial of bond, but also because of the existence of the remand to custody order. Accordingly, the presentence credit provided by Section 18-98d is not applicable to one in the petitioner's situation. The respondent, therefore, properly determined that the petitioner is not entitled to presentence credit pursuant to General Statutes Section 18-98d for the CT Page 9737 period between the filing of the remand to custody order and the revocation of his parole.
We now address the petitioner's contention that he has been denied the equal protection of the law. "[T]he equal protection clause of the fourteenth amendment to the United States constitution provides that no state shall `deny to any person within its jurisdiction the equal protection of the law.' Similar protection is afforded persons in this state by article first, Section 20 of the Connecticut constitution. Frazier v. Manson, 176 Conn. 638, 645, 410 A.2d 475 (1979)." Franklin v. Berger, 15 Conn. App. 74, 78, 544 A.2d 650
(1988). Equal protection of the laws "is a constitutional shield. . .which prohibits unequal treatment by the law of those who are similarly situated." Id. (Citations omitted).
 Equal protection analysis must commence with a determination of whether a legislative classification is invidious, or `inherently suspect,' or whether the legislation impinges upon a fundamental right. Where the legislation impinges upon a fundamental right or creates a suspect classification, then it must be struck down unless justified by a compelling state interest. Dunn v. Blumstein, 405 U.S. 330, 335, 342, 92 S.Ct. 995, 31 L.Ed.2d 274. Where the statute does not involve fundamental rights or suspect classifications, the legislation will withstand constitutional attack if the distinction is founded on a rational basis.
Frazier, supra, 645-46, quoting Laden v. Warden, 169 Conn. 540,542-43, 363 A.2d 1063 (1975) (Citations omitted).
The petitioner claims that persons who are in custody pursuant to a remand to custody order for a parole violation are "consigned to Never-Never Land, neither sentenced nor unsentenced" and thus are denied equal protection under the laws. The petitioner further asserts that his treatment must be justified by a compelling state interest because the refusal to credit the petitioner with jail time affects the period of his confinement and directly impinges upon his fundamental right of liberty.
Section 54-125 provides, in part,
 [a]ny person confined for an indeterminate sentence, after having been in confinement under such sentence for not less than the minimum term,. . .less such time as may have been earned CT Page 9738 under the provisions of section 18-7, may be allowed to go at large on parole in the discretion of the panel of the board of parole for the institution in which the person is confined, if (1) it appears from all available information, including such reports from the commissioner of correction as such panel may require, that there is reasonable probability that such inmate will live and remain at liberty without violating the law and (2) such release is not incompatible with the welfare of society. Such parolee shall be allowed in the discretion of such panel to return to his home or to reside in a residential community center, or to go elsewhere, upon such terms and conditions, including personal reports from such paroled persons, as such panel prescribes, and to remain, while on parole, in the legal custody and control of the board until the expiration of the maximum term or terms for which he was sentenced.
The board of parole may establish such rules and regulations as it deems necessary and may establish special provisions for the parole of any convict, and the commissioner of correction shall enforce such rules, regulations and provisions and "retake and reimprison any convict upon parole, for any reason that such panel, or the commissioner with the approval of the panel, deems sufficient." General Statutes Section 54-126.
A paroled convict or inmate who has been returned to custody for a parole violation "may be retained in the institution from which he was paroled for a period equal to the unexpired portion of the term of his sentence at the date of the request or order for his return less any commutation or diminution of his sentence earned except that the board of parole may, in its discretion, determine that he shall forfeit any or all of such earned time, or may be again paroled by said board." General Statutes Section54-128 (a). "Each parolee or inmate, subject to the provisions of Section 18-7, shall be subject to loss of all or any portion of time earned." General Statutes Section54-128 (b).
The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. Morrissey v. Brewer, 408 U.S. 471, 477, 33 L.Ed.2d 484,92 S.Ct. 2593 (1972). The enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his CT Page 9739 sentence if he fails to abide by the rules. Morrissey, supra, 479.
 Release of the parolee before the end of his prison sentence is made with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts. Given the previous convictions and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole.
Morrissey, supra, 483. The court in Morrissey held that due process requires a preliminary hearing upon the arrest and detention of the parolee, and a revocation hearing, tendered within a reasonable time after the parolee is taken into custody, prior to the final decision on revocation by the parole authority. Morrissey, supra.
The respondent argues that while the petitioner is ineligible for presentence credit on his subsequent sentence pursuant to Section 18-98d, the petitioner did receive all applicable credits on his original sentence for which he was returned to prison to serve. A construction of Section18-98d which denies the petitioner presentence credit for the time between the filing of the remand to custody order and the official revocation of his parole, does not mean that the petitioner is denied all credit for that period. The petitioner is eligible for the same credits as a sentenced prisoner, subject to the provisions of General Statutes Section 54-128, which gives the parole board discretion to determine whether the petitioner shall forfeit any or all of his earned time. See also General Statutes Section 18-7a(a) and (b). The fact that the General Statutes expressly provide that a parole violator is subject to forfeiture of time earned underscores the fact that such a person is not in the same position as a pretrial detainee awaiting trial.
Parole "is technically a custody status." Liistro vs. Robinson, 170 Conn. 116, 129, 365 A.2d 109 (1976); see General Statutes Section 54-125. One who has violated the conditions of parole may be retained in the institution from which he was paroled to serve out the balance of his sentence. General Statutes Section 54-128 (a). "Detainees awaiting trial must be considered innocent. Confinement is not to be punitive in nature; its purpose is only to preserve order and discipline and to guarantee that detainees will be CT Page 9740 available for trial." Laden, supra, 546. To treat the petitioner as a sentenced prisoner awaiting trial is consistent with the theory behind parole and the parole revocation process as delineated in the General Statutes Sections 54-125 through 54-128 and as discussed in Morrissey, supra. To treat the petitioner as a pretrial detainee for purposes of presentence credit on his subsequent sentence, as well as to allow him the credits as a sentenced prisoner awaiting a parole revocation hearing on his original sentence, would reward him for the parole violation by giving him double credits for the two month period.
The state is justified in distinguishing between pretrial detainees and those individuals who are pretrial detainees and are also convicted, sentenced parolees who have been reimprisoned pending a parole revocation hearing. The state's treatment of such individuals as sentenced prisoners for purposes of crediting time served is justified by compelling state interests in preserving the integrity of the parole process and discouraging criminal activity while released on parole. To reward such individuals with credit on their original sentence and presentence credit on their subsequent sentence does not further those interests. See, e.g. Payton, supra. (state's compelling interest in upholding commissioner's calculation of presentence credit based on principle that extra time served on a criminal sentence may not be "banked" and used to reduce sentences subsequently imposed). The petitioner was not denied equal protection for his treatment, for purposes of crediting the time served between the filing of the remand to custody order and the revocation of his parole, as a sentenced prisoners, rather than as a pretrial detainee.
The petitioner's ineligibility to be released on bond on his pending charges was consistent with the determination that his status was that of a sentenced prisoner being returned to custody rather than that of a pretrial detainee. A parolee has no constitutional or statutory right to be released on bail pending a parole revocation hearing. See Liistro, supra, 122-23, 130. Neither does he have a "protected constitutional or statutory liberty interest in parole release that gives rise to a claim of illegal confinement in a habeas action." Vincenzo v. Warden,26 Conn. App. 132, 142 (1991).
The petitioner argues that if he is treated as a sentenced prisoner, rather than a pretrial detainee, for purposes of crediting the time which he served between the filing of the remand to custody order and the revocation of parole, he is denied equal protection because he does not CT Page 9741 receive the "advantages" of a sentenced prisoner for that period of time, such as eligibility for release on parole, consideration for community release programs, and the ability to demand a speedy trial pursuant to General Statutes Section54-82c.
Eligibility for release on parole and consideration for community release programs are not fundamental rights, but rather discretionary determinations made by the board of parole or the commissioner or correction. See General Statutes Sections 54-125, 18-100; Wheway v. Warden, 215 Conn. 418,431, 576 A.2d 494 (1990). To survive an equal protection attack, such a classification need only be found upon a rational basis. A parolee who has been returned to custody pending a parole revocation hearing is not given a new parole eligibility date because, until a final determination of revocation, the parolee's term of imprisonment is not definite, which makes the setting of such a date impossible, or, in a case where parole is not revoked, unnecessary. The fact that a parolee awaiting a parole revocation hearing is ineligible, for the period of time prior to the hearing, for release on parole or into a community release program is justified by the potential risks to society in rereleasing him. There is a potential increase in the risk of flight for a parolee released pending the outcome of a hearing which may reimprison him for a substantial period of time, and a potential increased risk of danger to society of rereleasing a parolee who is facing a hearing for allegedly violating the conditions of an earlier release on parole. Because of his previous convictions, the state certainly has an interest in not rereleasing one who is accused of violating the conditions of his parole until a final determination of whether parole should be revoked. See Morrissey, supra, 483. The petitioner's ineligibility for release on parole or into a community release program during the two month period in which he was awaiting his revocation hearing did not violate his equal protection rights.
Finally, the petitioner claims that he was denied equal protection because, unlike other sentenced prisoners, he was ineligible to make a speedy trial claim pursuant to General Statutes Section 54-82c during the two month period between the filing of a remand to custody order and the revocation of his parole. The petitioner's equal protection claim is based solely on the statutory right to a speedy trial pursuant to Section 54-82c, and not on the fundamental constitutional right to a speedy trial guaranteed by the sixth andfourteenth amendments to the United States constitution and article first, Section 8 of the Connecticut constitution. CT Page 9742
General Statutes Section 54-82c(a) provides, in part,
 [w]henever a person has entered upon a term of imprisonment in a correctional institution of this state and, during the continuance of the term of imprisonment, there is pending in this state any untried indictment, or information against such prisoner, he shall be brought to trial within one hundred twenty days after he has caused to be delivered, to the state's attorney or assistant state's attorney of the judicial district or geographical area, in which the indictment or information is pending, and to the appropriate court, written notice of his imprisonment and his request for final disposition to be made of the indictment or information.
General Statutes Section 54-82c, like Section 54-186, provides a mechanism by which an inmate can remove the uncertainty of pending charges and can compel a speedy resolution of those charges. State v. Foshay, 12 Conn. App. 1,12, 530 A.2d 611 (1987), cert. granted, with limitation,205 Conn. 813, 532 A.2d 587 (1987), cert. dismissed (upon death of defendant) ___ Conn. ___ (1987). The speedy trial provision of General Statutes Section 5n 54-82c shall apply only to those whose rehabilitation would be upset by pending charges. State v. Harris, 14 Conn. App. 244, 250,540 A.2d 395 (1988).
 The federal Court of Appeals for the Third Circuit has noted that, even though the basis for a parolee's detention is the underlying sentence from which he has been paroled, until such time as the parole violator is recommitted after a hearing and his incarceration thereby made certain and fixed as to duration, no term of imprisonment can be said to have commenced or resumed within the terms of the federal counterpart to General Statutes Section 54-186. United States v. Dobson, 585 F.2d 55, 59
(3d Cir.), cert. denied, 439 U.S. 899, 99 S.Ct. 264, 58 L.Ed.2d 247 (1978).
Foshay, supra, 12-13.
In Foshay, the court concluded that the defendant, who was incarcerated in a state correctional institution as a result of a "parole sticker" lodged against him, was not entitled to the protections of General Statutes Section54-82c because the defendant had not entered upon a term of imprisonment with definite parameters and thus was not in the CT Page 9743 position of those inmates whom Section 54-82c was designed to protect. Foshay, supra, 13. Until the defendant's incarceration becomes certain and fixed as to duration, after a revocation hearing, he has no interest in institutional rehabilitation programs. Foshay, supra, 11-13.
Pursuant to the court's interpretation in Foshay, the petitioner is not entitled to the protections of Section54-82c for the short period of time in which his parole revocation hearing is pending. Because the right to claim a speedy trial pursuant to Section 54-82c is separate and distinct from the fundamental constitutional right to a speedy trial, the exclusion of parolees awaiting revocation from the purview of Section 54-82c need only be founded upon a rational basis. The exclusion of parolees awaiting a revocation hearing is rationally based upon the fact that the purpose of the statutes would not be served if those in the petitioner's situation were included. The petitioner's equal protection rights were not violated by his exclusion from the purview of the speedy trial statute, Section 54-82c.
The petition fore writ of habeas corpus is denied.
Hon. Howard Scheinblum Superior Court Judge