STATE FARM LIFE AND ACCIDENT ASSURANCE COMPANY
*v.* JAY W. JACKSON, INSURANCE COMMISSIONER

STATE FARM FIRE AND CASUALTY COMPANY *v.*
JAY W. JACKSON, INSURANCE COMMISSIONER

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY *v.* JAY W. JACKSON, INSURANCE
COMMISSIONER

(three cases)

SPEZIALE, C. J., PETERS, PARSKEY, ARMENTANO and SHEA, Js.

Argued June 4—decision released August 17, 1982

*Daniel R. Schaefer,* assistant attorney general,
with whom were *David M. Teed,* assistant attorney

general, and, on the brief, *Carl R. Ajello,* attorney general, and *Barney Lapp,* assistant attorney general, for the appellant (defendant in each case).

*Joseph G. Lynch* and *Mark B. Seiger,* with whom, on the brief, were *Richard C. Tynan* and *Timothy W. Donahue,* for the appellee (plaintiff in each case).

SHEA, J. The defendant insurance commissioner has appealed to this court from judgments deciding the issues for the three plaintiffs, which are insurance companies related to each other under the State Farm aegis selling different forms of insurance protection. Each plaintiff had separately appealed to the trial court from the action of the defendant in imposing restrictions upon the renewal of its license to do business in this state. These licenses were renewed effective on May 1, 1976, in accordance with General Statutes § 38-20,[1] which

[1] General Statutes § 38-20, as it read in 1976, was as follows: "AUTHORITY TO DO BUSINESS. REVOCATION. FINES. COMPANY OWNED BY FOREIGN STATE OR COMPANY CONTROLLED BY INSUREDS NOT TO BE LICENSED. APPEALS. No insurance company shall do any insurance business within this state until and except while it is permitted to do so under the terms of a license issued by the commissioner. Any such company desiring to obtain such a license shall make application to the commissioner, setting forth the lines of insurance which it desires to write. It shall file with the commissioner a certified copy of its charter or articles of association and evidence satisfactory to the commissioner that it has complied with the laws of the state or country under which it is organized and a statement of its financial condition in such form as is required by the commissioner, together with such evidence of its correctness as the commissioner requires. If the information furnished is satisfactory to the commissioner and if all other requirements of law have been complied with, he may issue to such company a license permitting it to do business in this state. Each such license shall expire on the first day of May succeeding the date of its issuance, but may be renewed without any formalities except as required by the commissioner. The commissioner may, at any time, for cause, suspend, revoke or reissue any such license or in lieu of or in addition to suspension or revocation

also provides for their expiration on the first day of May each year succeeding the date of issuance. Since the applicable expiration date, May 1, 1977, for the three licenses has long passed we raised the question of mootness suo motu and have afforded the parties the opportunity to address that issue in brief and in argument. All of the parties maintain

of such license the commissioner, after reasonable notice to and hearing of any holder of such license, may impose a fine not to exceed ten thousand dollars. Such hearings may be held by the commissioner or any person designated by the commissioner. Whenever a person other than the commissioner acts as the hearing officer, he shall submit to the commissioner a memorandum of his findings and recommendations upon which the commissioner may base his decision. The commissioner may, if he deems it for the interest of the public, publish in one or more newspapers of the state a statement that, under the provisions of this section, he has suspended or revoked the license of any insurance company to do business in this state. No license to do an insurance business within this state shall be issued to a nonresident insurance company owned or financially controlled by another state of the United States or to a foreign insurance company owned or financially controlled by a foreign nation or any state or province thereof. No license to do an insurance business within this state shall be issued to any company which insures or plans to insure the separate risks of the employees of an employer that directly or indirectly controls the insurer by stock ownership or otherwise or exercises control of the operations of the insurer where the premiums written annually by the insurer on the separate risks of such employees exceed or will exceed ten per cent of the total premiums which the insurer writes or will write annually or where the commissions payable, if any, on premiums covering the risks of such employees written by the insurer annually exceed or will exceed ten per cent of the total commissions to agents which are or will be paid annually by the insurer. Any company aggrieved by the action of the commissioner in revoking, suspending or refusing to reissue a license or in imposing a fine may, within a period of thirty days, petition the court of common pleas for Hartford county to require the commissioner to show cause why such license shall not be reinstated or reissued or fine reduced or eliminated, and, if the court finds that the action of the commissioner was arbitrary and unjustified, it shall take such action in the premises as may seem equitable. The pendency of such petition or rule to show cause shall not act as a stay of execution upon a revocation, suspension or fine. Petitions under this section shall be privileged in respect to the order of trial assignment."

that the three cases, which present the same issues and have been consolidated for the purpose of this appeal, are not moot. After due consideration we have reached the contrary conclusion and dismiss the appeal.

The restriction imposed by the defendant upon the licenses issued on May 1, 1976, limited the activities of the plaintiffs in this state to the renewal of insurance policies previously issued to Connecticut residents and to other policyholders who might later come to reside in this state. This action of the commissioner resulted from a controversy over the practices of the plaintiffs in soliciting business in Connecticut, particularly whether they were obligated to do so more actively. The effect of the restriction was to prohibit the plaintiffs from writing any new insurance business in Connecticut.

The plaintiffs claimed in the trial court that the commissioner had no "just cause" to impose the restriction under the authority of the licensing statute, § 38-20, and also made several claims of unconstitutionality. The trial court sustained their appeals, however, upon the more limited ground that the commissioner's policy of compelling insurance companies licensed to do business in Connecticut to serve all residents of the state could be implemented only by the issuance of an appropriate regulation in accordance with the Uniform Administrative Procedures Act, General Statutes § 4-168.

In appealing from the decision of the trial court the commissioner maintains that his action in restricting the plaintiffs' licenses did not require the prior promulgation of a regulation. His further contention is that the case should have been remanded in accordance with his pretrial motion,

as authorized by General Statutes § 4-183, for the presentation of additional evidence pertaining to the reasons for imposing the restrictions. On the other hand, the position of the plaintiffs before us is that the record sufficiently discloses the basis for the commissioner's action, that a regulation was an essential preliminary, and that the licensing authority created in § 38-20 does not include the power to impose conditions upon the renewal of a license.

"It is a well-settled general rule that the existence of an actual controversy is an essential prerequisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944). Although they concede the expiration on May 1, 1977, of the licenses which are the subject matter of the litigation, the parties separately advance several reasons to support their joint position that a real dispute still survives and that the case is not moribund for mootness.

The commissioner argues that the judgments of the trial court in sustaining the appeals implicitly require him to issue future licenses to the plaintiffs on an unrestricted basis. No such construction of the judgments, which by their terms merely sustain the appeals relating solely to the 1976-1977 licenses, is warranted. Nothing in the record suggests the judgments had any effect but to vitiate the limitations upon those licenses for the period during which they were effective or until some further action of the commissioner. Reference has been made to a separate suit brought by the plaintiffs when the commissioner attempted to conduct a hearing regarding the renewal of their licenses in

April, 1977. In that proceeding the court found that any such hearing was in violation of the stipulations of the parties made in these cases before the trial court that, pending their outcome, the plaintiffs could continue to operate in this state as they had done prior to May 1, 1976, when the restrictions were imposed. The temporary injunction issued by the court to enforce the stipulations by its terms will expire upon the disposition of this litigation. This order, therefore, can have no further effect and presents no barrier to a declaration of mootness.

The commissioner next points to the enactment of amendments to § 38-20 effectuated by Public Acts 1981, No. 81-101, §§ 7 (a) and 7 (b) effective October 1, 1981.[2] One amendment requires an insurer applying for a license to "demonstrate an orderly pattern of growth in its marketing territories in the geographic region and an expertise in marketing and servicing the lines of insurance it desires to write." Public Acts 1981, No. 81-101, § 7 (a). Recognizing, perhaps, the significance of that provision upon the present quarrel over the existence of any duty on

[2] Public Acts 1981, No. 81-101, provides, in relevant part: "Sec. 7. Section 38-20 of the general statutes is repealed and the following is substituted in lieu thereof: (a) No insurance company shall do any insurance business within this state until and except while it is permitted to do so under the terms of a license issued by the commissioner. Any such company desiring to obtain such a license shall make application to the commissioner, setting forth the lines of insurance which it desires to write. It shall file with the commissioner a certified copy of its charter or articles of association and evidence satisfactory to the commissioner that it has complied with the laws of the jurisdiction under which it is organized, a statement of its financial condition in such form as is required by the commissioner, together with such evidence of its correctness as the commissioner requires and evidence of good management in such form as is required by the commissioner. Applicant companies licensed in and operated from administrative offices in one state but domiciled in another state shall provide justification of such arrangement, satisfactory to the commissioner, which shall demonstrate that

the part of a licensed company to solicit business actively, the commissioner at this time argues that the amendment does not apply to the renewal of a license. This occasion is inappropriate for a resolution of that question because the plaintiffs presumably take the same position and because a significant consideration in determining the issue would be any regulation concerning renewals which the commissioner may adopt[3] as authorized by another amendment, Public Acts 1981, No. 81-101, § 7 (b). That amendment provides that "[t]he commissioner shall adopt regulations . . . specifying the information and evidence that an insurance company desiring to obtain or renew a license to do an insurance business shall submit and the requirements with which it shall comply." Public Acts 1981, No. 81-101, § 7 (b). This enactment also removes one of the principal objections raised by the commissioner to the conclusion of the trial court that the policy which he sought to enforce by issuing limited licenses to the plaintiffs should first have been the

---

regulatory influence of the domiciliary supervisory official has not been diminished as a result of such arrangement. An applicant shall demonstrate an orderly pattern of growth in its marketing territories in the geographic region and an expertise in marketing and servicing the lines of insurance it desires to write. It shall submit evidence of its ability to provide continuant and timely claims settlement. If the information furnished is satisfactory to the commissioner and if all other requirements of law have been complied with, he may issue to such company a license permitting it to do business in this state. Each such license shall expire on the first day of May succeeding the date of its issuance, but may be renewed without any formalities except as required by the commissioner. (b) The commissioner shall adopt regulations in accordance with the provisions of chapter 54 specifying the information and evidence that an insurance company desiring to obtain or renew a license to do an insurance business shall submit and the requirements with which it shall comply."

[3] See footnote 4, infra.

subject of a regulation. He contends that he had no authority to issue regulations prior to this amendment.

The principal concern of the commissioner in contesting a dismissal for mootness appears to be whether any regulation could be applied retroactively to the claimed unethical conduct of the plaintiffs in breaching certain commitments said to have been made to him. This reluctance to let bygones be bygones where ethical principles may be involved may be commendable but does not by itself entitle him to a resolution of the issue by this court, even if that were possible on the present state of the record, which it is not. The parties concede that we cannot now resolve that issue because of the absence of any evidentiary hearing. Unless such a determination would provide the basis for action by the commissioner at some future licensing proceeding the situation would be one where "no practical relief can follow." *Reynolds* v. *Vroom,* supra. Past conduct of an applicant may reflect present character and, therefore, be a pertinent, though not necessarily controlling, consideration in a licensing proceeding. The relevance of any misconduct of these plaintiffs, which are corporate entities likely to have undergone some personnel changes in the six years which have passed since this action was brought, to their current qualifications for insurance licenses can more readily be determined at a hearing for that purpose than upon a remand of this case focusing exclusively on the events of six years ago.

The plaintiffs as well as the commissioner place great reliance upon the recognized exception to the mootness doctrine for situations which are "capable of repetition, yet evading review." *Southern Pacific*

*Terminal Co.* v. *Interstate Commerce Commission,* 219 U.S. 498, 515–16, 31 S. Ct. 279, 55 L. Ed. 310 (1911); *Waterbury Hospital* v. *Connecticut Health Care Associates,* 186 Conn. 247, 253, 440 A.2d 310 (1982); *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 20, 411 A.2d 1 (1979). The one year duration of an insurance license as compared to the protracted course of this litigation would suggest the applicability of that exception. The enactment of the amendments to General Statutes § 38-20 in 1981 which refer to marketing practices as relevant to the qualification of an applicant and require the commissioner to prescribe regulations for licenses, however, is highly significant in this dispute between the parties. The parameters of that controversy in any current licensing proceeding would be framed by the licensing statute, § 38-20, as it presently exists with the amendments and any regulations which the commissioner may have issued to implement it.[4] Any answer by this court to the question posed by the present appeal of whether the commissioner's action in 1976 was justified would not serve any useful purpose in a current licensing proceeding under a different legal framework. We conclude that the exception is inapplicable because the amendments to § 38-20 make the precise legal issues presently raised incapable of repetition.

The plaintiffs make a further claim that the licensing statute, § 38-20, does not authorize the

[4] The commissioner has issued regulations in accordance with his statutory authority which became effective on June 3, 1982, the day before argument of this appeal. Regs., Conn. State Agencies §§ 38-20-1 through 38-20-5. These regulations apply to any unlicensed insurance company seeking to solicit or market insurance products in this state and include provisions implementing § 7 (a) of Public Acts 1981, No. 81-101. See Insurance Regulations § 38-20-3 (B) (1) and (2).

issuance of a restricted license in any event, a deficiency of authority claimed not to be affected by the amendments. Although the issue may have been raised in the trial court, it was not addressed in the memorandum of decision. The plaintiffs have failed to follow the procedure prescribed in Practice Book § 3012 (a)[5] for presenting alternative grounds to affirm the decision on appeal. We, therefore, may not consider this claim regardless of whether the case is moot.

The appeal is dismissed for mootness.

In this opinion the other judges concurred.

---

[5] Practice Book § 3012 (a) provides as follows: "The appellant shall submit . . . to the chief clerk of the supreme court at the time a copy of the appeal is sent: (a) A preliminary statement of the issues intended for presentation on appeal. If the appellee wishes to present for review alternate grounds upon which the judgment may be affirmed, or if he wishes to present for review adverse rulings or decisions of the court which should be considered on appeal in the event the appellant is awarded a new trial, he may file a preliminary statement of issues within fourteen days from the filing of the appeal."