CHRISTOPHER SHAYS *v.* LOCAL GRIEVANCE
COMMITTEE ET AL.
(12712)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued October 3—decision released November 5, 1985

*Clarine N. Riddle,* counsel to the attorney general, with whom were *Arnold B. Feigin* and *Richard F. Kehoe,* assistant attorneys general, and, on the brief, *Joseph I. Lieberman,* attorney general, for the plaintiff.

*Ira B. Grudberg,* with whom was *Alice S. Miskimin,* for the defendant.

PETERS, C. J. While this opinion is handed down under the name of the chief justice, it is the result of collaboration on the part of all the members of the court to an unusual degree. See *State* v. *Avcollie,* 174 Conn. 100, 101, 384 A.2d 315 (1977); *State* v. *Hayes,* 127 Conn. 543, 549, 18 A.2d 895 (1941). The underlying issue in this case is whether article third, § 15, of the Connecticut constitution precludes a court from imprisoning a legislator for contempt while the legislature is in session. Before that question can be reached, however, we must decide whether the present proceedings have become moot.

The writ of error brought to this court by the plaintiff, Christopher Shays, arose out of grievance proceedings that were being conducted on March 4, 1985, before the Superior Court, *N. O'Neill, J.,* in the case of *Grievance Committee Hartford-New Britain Judicial District* v. *Alexander A. Goldfarb,* Docket No. CV-84-0295671S.[1] The plaintiff had previously filed a complaint with the grievance committee concerning certain alleged actions by Alexander Goldfarb and sought an opportunity to make a statement on the witness stand concerning alleged dereliction of duty on the part of the grievance committee in that committee's pursuit of his complaint. Counsel for Goldfarb

---

[1] The plaintiff named the following as defendants in the writ of error: the local grievance committee of the Hartford-New Britain judicial district, Alexander A. Goldfarb and the Honorable Norris L. O'Neill. The substantive allegations of the writ relate solely to that aspect of the litigation between the local grievance committee and Alexander A. Goldfarb in which the plaintiff was found in contempt.

objected to the plaintiff's request to make such a statement, and the trial court, *N. O'Neill, J.,* sustained the objection despite an earlier indication by the court, *Stoughton, J.,* to the plaintiff that a statement would be permitted.[2] When the plaintiff persisted in his effort to make a statement in the face of Judge O'Neill's adverse ruling and then refused to obey the trial court's direct order to step down from the witness stand, he was held in contempt of court. Acting pursuant to General Statutes § 51-33,[3] Judge O'Neill sentenced the plaintiff to ten days imprisonment. After the plaintiff had commenced the service of his sentence, he asked the trial court, *Stoughton, J.,* on March 12, 1985, to issue the presently pending writ of error, alleging that his sentence for contempt violated article third, § 15, of the Connecticut constitution. Upon the issuance of the writ by Judge Stoughton and pending its resolution, the plaintiff was immediately released. At all times relevant to the contempt proceedings the plaintiff was a state representative from Stamford, and the General Assembly was then in session. When the legislative session had been adjourned, the plaintiff himself on June 10, 1985, filed with the trial court, *Stoughton, J.,* a motion to vacate his release. Upon the granting of this motion, the plaintiff served the remaining portion of the contempt sentence that had been imposed in March by Judge O'Neill.

The plaintiff's writ of error raises, as its major issue, the question of the proper construction of that portion

[2] At that time, Judge Stoughton was the administrative judge for the judicial district of Hartford-New Britain.

[3] "[General Statutes] Sec. 51-33. PUNISHMENT FOR CONTEMPT OF COURT. Any court may punish by fine and imprisonment any person who in its presence behaves contemptuously or in a disorderly manner; but no court may impose a greater fine than one hundred dollars or a longer term of imprisonment than six months or both." See *Naunchek* v. *Naunchek,* 191 Conn. 110, 115, 463 A.2d 603 (1983); *Moore* v. *State,* 186 Conn. 256, 261, 440 A.2d 969 (1982).

of the Connecticut constitution which provides: "The senators and representatives shall, in all cases of civil process, be privileged from arrest, during any session of the general assembly, and for four days before the commencement and after the termination of any session thereof." Conn. Const., art. III § 15. The crucial question of construction in this case is a determination of what scope is afforded by the constitution to a legislative privilege limited to "cases of civil process." In particular, we are asked to decide whether the legislative privilege was applicable to the plaintiff's imprisonment upon his contumacious refusal to obey Judge O'Neill's order to leave the witness stand. The plaintiff has advanced three theories in support of his argument that his is a case of "civil process" within article third, § 15: (1) the sanction imposed was for civil rather than for criminal contempt; (2) even if the sanction was for criminal contempt, because the underlying case was a civil action, the contempt for constitutional purposes is a civil case; or (3) even if the sanction was for criminal contempt, criminal contempt is not a violation of the criminal laws, and the contempt for constitutional purposes is therefore a civil case.

The defendant's answer to the writ of error disputes the plaintiff's characterization of his contempt citation and the plaintiff's construction of article third, § 15. In addition, the defendant raises two further issues relevant to the proper disposition of this case. Reminding us that the plaintiff never invoked the legislative privilege in the proceedings before Judge O'Neill, the defendant urges us to find that the privilege was effectively waived. Notably, once the plaintiff determined that he would rely upon the privilege, and so informed the trial court by his writ of error, he immediately received the deferment from imprisonment to which he claims to have been constitutionally entitled. Furthermore, recalling that the plaintiff completed the ser-

vice of his sentence upon the termination of the legislative session, the defendant urges us to conclude that there is no further relief that we can afford to this plaintiff and that his case has therefore become moot.

In our pursuit of these various inquiries, it is important to be clear about the narrowness of the present proceedings, both as a matter of law generally and as a matter of the particular pleadings presently before us. As a matter of law generally, review pursuant to a writ of error is limited to matters appearing as of record. *Naunchek* v. *Naunchek,* 191 Conn. 110, 113, 463 A.2d 603 (1983); *McClain* v. *Robinson,* 189 Conn. 663, 668, 457 A.2d 1072 (1983); *State* v. *Assuntino,* 180 Conn. 345, 347, 429 A.2d 900 (1980). With respect to the present pleadings, the plaintiff has in his brief limited his claim of impropriety to his alleged legislative privilege, having expressly abandoned the alternate claim of lack of due process raised initially in his writ of error. Moreover, in oral argument before this court, counsel for the plaintiff expressly acknowledged that the plaintiff's conduct constituted contempt and that the trial court was authorized to impose a sanction upon the plaintiff for his contumacious conduct. The only reason this case is here, in light of these concessions, is the plaintiff's argument that, as a matter of *timing,* Judge O'Neill's imposition of sanctions violated the plaintiff's legislative privilege under the Connecticut constitution. Judge O'Neill, it is claimed, might constitutionally have sentenced the plaintiff to ten days imprisonment to commence five days after the conclusion of the 1985 session of the General Assembly, but he was constitutionally precluded from implementing a sanction of imprisonment until that time.

It is also important to note the factual posture within which these limited questions of law are presented to us. The plaintiff has served in its entirety the sentence whose legality he disputes. Indeed, he undoubtedly

elected to complete in June the service of his sentence because, even were his interpretation of article third, § 15, to be correct, his legislative privilege to defer his sentence would have expired upon the termination of the legislative session. If this court were to rule in the plaintiff's favor, there is no way in which we could restore to the plaintiff any of the time that he has spent incarcerated. We have been able to discern no practical relief that we could afford to the plaintiff, and the plaintiff has himself conceded that he will not be directly affected by any ruling that we may make on his claim of legislative privilege.

On this state of the record, before proceeding to the merits of the scope of the plaintiff's legislative privilege, we must first determine whether we lack jurisdiction to hear this case on the ground of mootness. "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." *Reynolds* v. *Vroom*, 130 Conn. 512, 515, 36 A.2d 22 (1944); *McCallum* v. *Inland Wetlands Commission*, 196 Conn. 218, 225, 492 A.2d 508 (1985); *Accurate Forging Corporation* v. *UAW Local No. 1017*, 189 Conn. 24, 26, 453 A.2d 769 (1983); *State Farm Life & Accident Assurance Co.* v. *Jackson*, 188 Conn. 152, 156, 448 A.2d 832 (1982); *CEUI* v. *CSEA*, 183 Conn. 235, 246, 439 A.2d 321 (1981). "In the absence of an actual and existing controversy for us to adjudicate in any sense of the term, the courts of this state may not be used as a vehicle to obtain judicial opinions upon points of law; *Reply of the Judges*, 33 Conn. 586 [1867]; and where the question presented is purely academic, we must refuse to entertain the appeal. *Young* v. *Tynan*, 148 Conn. 456,

459, 172 A.2d 190 [1961]." *Connecticut Foundry Co.*
v. *International Ladies Garment Workers Union,* 177
Conn. 17, 19,. 411 A.2d 1 (1979).

The plaintiff urges us to exercise appellate jurisdiction, despite the fact that we can provide him no practical relief, because of the public importance of the question that he presents to us for resolution.[4] He relies on *Delevieleuse* v. *Manson,* 184 Conn. 434, 439 A.2d 1055 (1981), in which we reviewed the merits of a claim concerning jail time credit for a plaintiff who had served his entire sentence. Although that case had not been brought as a class action, the parties had stipulated that its outcome would affect approximately 200 inmates. In those circumstances, we based our decision to hear the appeal on the applicability of the principle that, where the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, it may be "capable of repetition, yet evading review." See *Weinstein* v. *Bradford,* 423 U.S. 147, 148–49, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975). We held that in determining whether to rely on this mitigating principle we would consider a number of relevant factors. Among the factors we have identified are: (1) the public importance of the question presented; (2) the potential effect of the ruling on an ongoing program of the

---

[4] The plaintiff at oral argument expressly disavowed any claim that his writ of error might not be moot because of possible adverse legal consequences that might result from his contempt conviction. Where collateral legal disabilities are imposed as a matter of law because of a criminal conviction, it is well established that a case will not be declared moot, even where the sentence has been fully served. See *Pennsylvania* v. *Mimms,* 434 U.S. 106, 108 n.3, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977); *Sibron* v. *New York,* 392 U.S. 40, 53–57, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968); *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 452, 352 A.2d 291 (1974). Because contempt proceedings are not themselves criminal cases; *Naunchek* v. *Naunchek,* 191 Conn. 110, 115 n.5, 463 A.2d 603 (1983); *State* v. *Jackson,* 147 Conn. 167, 169, 158 A.2d 166 (1960); we assume, without deciding the matter, that no such collateral consequences attend a conviction for contempt.

state's penal or civil system; and (3) the possibility of a similar effect on the plaintiff himself in the future. *Waterbury Hospital* v. *Connecticut Health Care Associates,* 186 Conn. 247, 253 n.5, 440 A.2d 310 (1982); *Delevieleuse* v. *Manson,* supra, 437.

This court has never asserted jurisdiction over a case that would otherwise be moot simply on the ground of the public importance of the question presented. Apart from the numerous cases in which appeals raising serious questions about labor injunctions have been declared moot; *Accurate Forging Corporation* v. *UAW Local No. 1017,* supra; *CSEA* v. *AFSCME,* 188 Conn. 196, 448 A.2d 1341 (1982); *Waterbury Hospital* v. *Connecticut Health Care Associates,* supra; *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* supra; we have held unreviewable questions of importance involving the authority of numerous instrumentalities of government, including the Connecticut Resources Recovery Authority; *DeFonce Construction Corporation* v. *Connecticut Resources Recovery Authority,* 177 Conn. 472, 474–75, 418 A.2d 906 (1979); the insurance commissioner; *State Farm Life & Accident Assurance Co.* v. *Jackson,* supra, 152–60; and the juvenile court. *Maloney* v. *State,* 179 Conn. 309, 310, 426 A.2d 288 (1979). In each instance, we have expressly concluded that we lacked jurisdiction when the principle of "capable of repetition, yet evading review" was inapplicable.

Whether this case is moot therefore turns not only on the importance of the constitutional issue that the plaintiff has raised but also on a determination that his case satisfies the overall test of "capable of repetition, yet evading review." Although the applicability of the legislative privilege to contempt proceedings may be difficult to litigate before expiration of the privilege, this case does not satisfy the second or the third criterion identified in *Delevieleuse* v. *Manson,* supra.

It goes without saying that there has been neither allegation nor showing that contempt proceedings against legislators are part of an ongoing penal or civil program. To the best of our knowledge, no court in this state has ever previously held a legislator in contempt of court. It is therefore highly improbable that this plaintiff will again be subject to the sanction of imprisonment for contempt of court during a legislative session. In short, this record demonstrates an isolated incident not likely to be repeated in the foreseeable future. In such circumstances, when this court can afford the plaintiff no practical relief, his case is moot.

The writ of error is dismissed as moot.

In this opinion the other judges concurred.