JOHN F. CARR, JR. *v.* ELLIOTT WOOLWICH ET AL.
(6462)

BORDEN, DALY and O'CONNELL, Js.

Argued October 12, 1988—decision released January 31, 1989

*Timothy S. Hollister,* with whom, on the brief, was *Eric Lukingbeal,* for the appellant (defendant Bridgewater planning and zoning commission).

*Neil F. Murphy, Jr.,* with whom, on the brief, was *Philip Nelson Walker,* for the appellee (plaintiff).

BORDEN, J. This case is a sequel to our decision in *Carr* v. *Woolwich,* 7 Conn. App. 684, 510 A.2d 1358, cert. denied, 201 Conn. 804, 513 A.2d 698 (1986) (*Carr I*). The defendant Bridgewater planning and zoning commission[1] appeals from the judgment of the trial court holding it in contempt and ordering it to issue to the plaintiff a zoning permit and certificate of site plan approval for the construction of a hotel. The defendant claims that the court erred (1) by ruling that a certain zoning permit issued by the defendant to the plaintiff in August, 1986, in compliance with *Carr I,* was invalid because it was unsigned, and (2) by ordering the defendant to issue a certificate of site plan approval.[2] The dispositive issue is whether the trial

---

[1] The named defendant, Elliott Woolwich, was chairman of the defendant commission in 1983, when the proceedings leading to *Carr I* were held. He is no longer a member of the commission. Only the defendant commission was adjudged in contempt. We, therefore, refer herein to the commission as the defendant.

[2] The defendant also claims that the court erred by acting on the plaintiff's motions for contempt and ordering a new zoning permit because other

court erred by holding the defendant in contempt because the zoning permit issued in August, 1986, by the defendant to the plaintiff in compliance with *Carr I* was unsigned. We find error.

Some background is in order. In October, 1983, the plaintiff applied to the defendant for approval of a zoning permit and site development plan for construction of a hotel and restaurant, and the defendant failed to act on that approval within the time limitations set by General Statutes § 8-7d. The plaintiff brought a mandamus action, claiming that his application was approved by the passage of time pursuant to General Statutes § 8-3 (g). The trial court agreed, and rendered a judgment of mandamus in favor of the plaintiff. On appeal, we found no error. We held that, under the facts of the case, "[t]he application [for a zoning permit], the site plan itself and accompanying two page document, taken together, purported to show all such data required by the regulations. Thus, for purposes of General Statutes § 8-3 (g), the plaintiff's site plan included his application and two page document." *Carr I*, supra, 700. We also noted that "[s]ince . . . the plaintiff's site plan included his application and other documents for purposes of § 8-3 (g), those documents are presumed to have been approved as well." Id.

After *Carr I* was decided, the defendant commission met on August 6, 1986, in order to comply with the trial court's order of mandamus, and voted that "a certificate of approval for the application of a zoning permit and site development plan submitted by the [plaintiff] on October 11, 1983 is hereby issued." The plaintiff's approved site plan was filed with the town clerk and the original of the zoning permit was issued to him. A

actions were pending requesting the same relief. Our conclusions regarding the defendant's first two claims render it unnecessary to consider this claim.

copy of the zoning permit was also filed with the town clerk. The original zoning permit issued to the plaintiff was unsigned, although the copy of it filed with the town clerk was signed by the clerk of the defendant. With that sole exception, the documents are identical, and both contain all relevant information.

On July 23, 1987, the plaintiff moved that the defendant be held in contempt of court on the grounds, inter alia, that the defendant had improperly issued a cease and desist order directing him to discontinue site grading, that the only matter before the defendant was a request by the plaintiff to extend his zoning permit, and that the defendant had improperly sought a temporary injunction to prohibit the plaintiff from engaging in site development work on his property. On August 24, 1987, the plaintiff filed a supplemental motion for contempt. This motion restated certain claims contained in the previous motion for contempt, and asserted for the first time that the zoning permit issued by the defendant pursuant to the trial court's mandamus order was unsigned and was therefore invalid. Both motions requested that the defendant be held in contempt, and that certain other relief be granted.

The plaintiff's motions for contempt came before the court on October 2, 1987. The court decided that the zoning permit issued by the defendant was invalid because it was unsigned. The court did not address any other issues. It thereupon found the defendant in contempt of court, and ordered the defendant to issue a signed "certificate of approval of the plaintiff's application for a zoning permit, site development plans and maps submitted to [the defendant] on October 11, 1983, in accordance with the judgment approved by the Appellate Court . . . ." The court also stated that "if this is done the court will vacate the contempt finding," and it retained jurisdiction to "entertain motions for extension of time if they are not granted by the defend-

ant." The court also ruled, with respect to the beginning of the time periods for the zoning permit and site plan approval, that the period or periods would run from the date of compliance with the court's present order.[3] Thereafter, in compliance with the court's order the defendant issued a new, signed zoning permit to the plaintiff, filed with the town clerk a site development plan signed by the defendant's members and issued to the plaintiff a certificate of site plan approval. Also in compliance with the court's order, the defend-

---

[3] Although not squarely presented by this appeal, it is apparent, and the parties do not dispute, that the principal substantive dispute between them involves the length of life of the zoning permit issued by the defendant to the plaintiff. The defendant's position is that, although the site plan approval is valid for five years from the date of its issuance; see General Statutes § 8-3 (i); the life of the zoning permit is governed by § 2.2.12.c. of the town's zoning regulations, which requires, in general terms, certain work to have been completed within one year of the issuance of the zoning permit, unless extensions are granted by the defendant for good cause. The plaintiff's position is that the zoning permit and site plan approval cannot be treated separately, that the zoning permit has a five year life span coextensive with the site plan approval, and that our decision in *Carr I* implicitly held that to be the case.

Although the reference in the trial court's order to the site development plans and maps, and to the decision in *Carr I,* can be read as resolving this issue, it is clear from the transcript that the trial court did not do so. In response to the defendant's argument that the zoning permit and site plan approvals were on "different time tracks," the court replied: "That argument would only be good if you issued a valid permit." The court also ruled that, with respect to the beginning date of the certificates of approval, they would run from the date of issuance, which the court ordered to be on or before October 13, 1987. When the defendant requested clarification from the court whether it was also ruling on the dispute regarding the termination dates of the documents, the court stated: "I am not acting upon that issue at this time. I said I would retain jurisdiction over the matter in the event that becomes an issue in the future."

It is clear, therefore, that the trial court's reference in its order to the site plan approval and maps was linked to its determination that the zoning permit was invalid because it was unsigned. Thus, the issue of when the zoning permit expires was not decided by the trial court, and remains the subject of further litigation between the parties in the trial court, in this and in other cases. We, therefore, do not address it at this time.

ant noted on the certificate of site plan approval issued to the plaintiff that it took effect on October 8, 1987, and was valid for five years thereafter, until October 8, 1992. This appeal followed. On October 11, 1987, the court ordered the defendant "purged" of the contempt because it had complied with the court's order of October 2, 1987.

I

We first consider the plaintiff's argument that we should dismiss the defendant's appeal as moot. The plaintiff points out that the trial court did not impose a penalty on the defendant for the contempt, and relies on the general principle that where a contemner has complied with the trial court's order, thus purging itself of the contempt, the contemner's appeal is moot because there is no practical relief that the appellate court can order. The plaintiff relies on *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 499 A.2d 1158 (1985), *Dukes* v. *Durante,* 192 Conn. 207, 471 A.2d 1368 (1984), and *Whiteside* v. *Burlant,* 153 Conn. 204, 215 A.2d 100 (1965). We conclude that *Shays, Dukes* and *Whiteside* are distinguishable from this case, which is more closely analogous to *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 444 A.2d 196 (1982), and that therefore the appeal is not moot.

In *Shays* v. *Local Grievance Committee,* supra, the plaintiff had been sentenced to ten days imprisonment for his contempt of court and had fully served that sentence before his writ of error was heard by our Supreme Court. The court dismissed the appeal for want of any practical relief it could afford the appellant, holding that the appeal was moot because "[i]f this court were to rule in the plaintiff's favor, there is no way in which we could restore to the plaintiff any of the time that he has spent incarcerated." Id., 571. In *Dukes* v. *Durante,* supra, the trial court had found the city of

New Haven and its housing officials in contempt of court for failure to place the plaintiffs in permanent housing, and allowed the city and its housing officials one month to do so. They complied, and no sanctions were imposed. The Supreme Court dismissed the defendants' appeal because their compliance had rendered the appeal academic. Id., 227. In *Whiteside* v. *Burlant,* supra, the plaintiff had sought a writ of habeas corpus to invalidate his conviction of criminal libel. The trial court dismissed the writ, and the plaintiff appealed to the Supreme Court. The court dismissed the appeal as moot because the plaintiff had served the sentence of incarceration imposed and completed his probationary period. Id., 206–207.

*Shays* and *Dukes* do not control the case presently before us because in those cases there truly was no practical relief affordable by a successful appeal. The only practical consequence of the judgment of contempt and ensuing order was, in *Shays,* a period of incarceration that had been served and, in *Dukes,* an order that had been complied with and that the appellant did not claim could be undone. *Whiteside* does not control here because it is no longer good law. The doctrine of collateral consequences now shields from mootness an appeal challenging a criminal conviction even when the appellant has served the sentence imposed. *Sibron* v. *New York,* 392 U.S. 40, 53–55, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968); *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 452, 352 A.2d 291 (1974); see also *Sgarellino* v. *Hightower,* 13 Conn. App. 591, 594–95, 538 A.2d 1065 (1988) (collateral consequences flowing from judgment of contempt may shield appeal from mootness).

This case is analogous to *Papa* v. *New Haven Federation of Teachers,* supra. In *Papa,* the defendants were found in contempt for violation of the trial court's order enjoining them from participating in a teachers strike.

The court imposed conditional, coercive penalties of incarceration, and fines for each day that they continued in contempt. When the strike did not end by the time set by the court, the conditional penalties were imposed. The defendants were incarcerated and paid the fines. Shortly thereafter, the strike was settled. The defendants appeared in court to purge themselves of contempt, and moved that the fines be remitted or rescinded. The trial court refused to do so. On appeal, the Supreme Court held that the defendants' appeal from the judgment of contempt was not moot because "[a]lthough the defendants' incarceration, if erroneous, can not now be undone, the payment of the fines, if erroneous, can be." Id., 731-32 n.6.

Similarly, in this case the issuance of the new zoning permit and certificate of site plan approval, if erroneous, can be undone. If we were to find error, the defendant could revoke the zoning permit and certificate of site plan approval issued in October, 1987. That, in turn, would mean that the beginning date of both the zoning permit and site plan approval was in August, 1986, rather than October, 1987.[4] Thus, this appeal is not moot. We turn, therefore, to the grounds of the defendant's appeal.

## II

The defendant first claims that the court erred in determining that the zoning permit issued to the plaintiff in 1986 was invalid because it was unsigned. We agree.

---

[4] In this regard, the defendant does not claim that the plaintiff was not entitled to a zoning permit and site plan approval. Its position is that its compliance in August, 1986, following *Carr I,* was sufficient, and that therefore the one year provided by § 2.2.12.c of the zoning regulations and the five years provided by General Statutes § 8-3 (i); see footnote 3, supra; run from that date, and not from October, 1987, when the defendant was required by the court to issue a formal certificate of site plan approval with a new beginning date.

We first consider our scope of review of the court's judgment of contempt. "Although on appeal from a judgment of civil contempt, our scope of review is technically limited to jurisdictional questions such as whether the court had authority to impose the penalty inflicted and whether the conduct penalized could constitute a contempt, that scope of review is sufficiently broad to encompass many claims of error which are not facially jurisdictional." *Foley* v. *Southport Manor Convalescent Center, Inc.,* 11 Conn. App. 530, 536, 528 A.2d 418, cert. denied, 205 Conn. 805, 531 A.2d 935 (1987); see also *Barbato* v. *J. & M. Corporation,* 194 Conn. 245, 250–51, 478 A.2d 1020 (1984); *Papa* v. *New Haven Federation of Teachers,* supra, 732. We conclude that the applicable scope of review encompasses the defendant's claims of error on this appeal.

The parties agree that, following its compliance with *Carr I,* the defendant voted to issue to the plaintiff a certificate of approval of the plaintiff's application for a zoning permit and site development plan. The defendant's minutes clearly reflect this vote. It is also undisputed that the plaintiff's approved site plan was recorded with the town clerk, a signed copy of the zoning permit was filed with that clerk, and an unsigned zoning permit, containing all the necessary information, was issued to the plaintiff.

Although it would have been better practice to sign the zoning permit delivered to the plaintiff, we know of no statute or rule of law that, under these circumstances, would invalidate the plaintiff's zoning permit solely because the copy in his possession was unsigned. Ordinarily, a municipality's actions are determined by reference to its records. 5 E. McQuillan, Municipal Corporations (3d Ed. 1981) § 14.05. The law usually designates the municipal officer to keep its records, and it is essential only that the record accurately reflect the truth of what happened. Id., § 14.02. Municipal records,

to be complete, should show all the essential or material facts concerning the vote or transaction in question. Id., § 14.03. Even the failure of the municipal officer to sign the minutes will not invalidate them, unless the law specifically requires that they be signed. Id. General Statutes § 7-23 provides in pertinent part, that "[t]own clerks shall keep the records of their respective towns and truly enter therein, either by transcribing or by photographic process, all votes of the town and give true copies of the same and of all deeds and other instruments by them recorded . . . ."

In this case, the records of the defendant, and of the town of which the defendant was an agency, clearly reflect that in 1986 the plaintiff was issued a zoning permit, and that his site plan was approved. Those records also clearly establish the validity of the zoning permit and of the site plan approval. That the zoning permit issued to the plaintiff was unsigned did not invalidate it. Indeed, had anyone, even the plaintiff himself, at any time sought a "true cop[y]"; id.; of the zoning permit from the town clerk, that copy would have been signed. Under these circumstances, the court erred by holding the initial zoning permit to be invalid.

## III

The defendant also claims that the court erred by ordering the defendant to issue a certificate of site plan approval. This claim arises from the following procedural context.

During the hearing on the plaintiff's motion for contempt, the defendant twice represented to the court that it did not question the validity of the site plan approval voted and recorded in the town clerk's office in 1986. The plaintiff introduced into evidence a copy of the minutes of the August 6, 1986 meeting of the defendant when it voted to issue a certificate of approval of the plaintiff's site development plan. The

plaintiff complained, however, that "we never received anything from the town purporting to be" an approved site plan.

The court thereupon expanded its order for the issuance of a signed zoning permit by mandating that the defendant also issue to the plaintiff a certificate of approval of the plaintiff's site development plans and maps submitted to the defendant on October 11, 1983. The court also stated that it was not resolving the issue of whether the zoning permit and the site development plan approval had the same or different termination dates. See footnote 3, supra. It did, however, order that the *beginning* date of both approvals would be in 1987, upon compliance with its current order. It stated that "because [the defendant] . . . didn't do what [it] should have, the time the clock is starting to run is when they issue it . . . which is 1987." It is apparent, therefore, that the court's inclusion in its order of the certificate of site plan approval was based on its view that the zoning permit issued in 1986 was invalid, and that the site plan approval was inextricably linked therewith.

We have concluded, however, that the initial, albeit unsigned, zoning permit was valid. We need not decide in this case whether the two actions of the defendant—approval of the zoning permit and of the site plan approval—are inextricably linked together for all purposes. The same reasoning and authorities that led us to conclude that the 1986 zoning permit is valid, lead us to conclude that the 1986 site plan approval was valid, namely, that the records of the defendant and of the town clearly indicate that validity. To the extent that the trial court ordered the defendant to issue a formal certificate of site plan approval to the plaintiff, it did not err because its order was a harmless and probably unnecessary act. To the extent, however, that the court started a new time clock running on that

approval, it did err, because the statutory time period; General Statutes § 8-3 (i); began to run in 1986, when the defendant complied with *Carr I.*

Although we have found error in the court's judgment of contempt, it is apparent from the record of this case that the plaintiff was prepared to present and argue other claims as bases for holding the defendant in contempt. That process was truncated when the court concluded that the 1986 zoning permit was invalid because it was unsigned. The plaintiff may still wish to present those bases. The case must be remanded, therefore, for further proceedings on the plaintiff's motions for contempt of court.

There is error, the judgment of contempt is set aside and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.